### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| SAVAGE SERVICES CORPORATION, et al., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) CIV. ACT. NO. 1:20-cv-137-TFM-N |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' *Motion for New Trial* (Doc. 237, filed 4/27/23). Though styled as a motion for new trial, many arguments raised would appear to be a motion for reconsideration or motion to alter or amend judgment. Therefore, the Court considered under both Fed. R. Civ. P. 59(a) and 59(e). Defendant filed a response in opposition, and Plaintiffs filed its reply. Docs. 239, 240. Having considered the motion, response, reply, and relevant law, the Court finds the motion is due to be **DENIED**.

### I.     STANDARD OF REVIEW

Rule 59(a) provides that after a non-jury trial "[t]he court may, on motion, grant a new trial on all or some of the issues – and to any party…for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court" or "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions or law or make new ones, and direct the entry of a new judgment." FED. R. CIV. P. 59(a)(1)(B), (a)(2). "The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." *United States v. Marion*, 562 F.3d 1330, 1335 (11th Cir. 2009) (per curiam) (quoting *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (per curiam), *cert. denied*, 552 U.S. 1040, 128 S. Ct.

660, 169 L. Ed. 2d 511 (2007)). "[A] Rule 59[] motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur*, 500 F.3d at 1343 (quoting *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005)).  Further, a motion under Rule 59 must be filed no later than 28 days after the entry of judgment. FED. R. CIV. P. 59(b).  The Rule 59 motion was timely filed as the judgment was entered on March 30, 2023.[1]

## II.     DISCUSSION AND ANALYSIS

Savage sets forth thirteen different arguments as to why its motion should be granted – some relate to the legal conclusions before and during trial and others relate to the Court's factual findings.  The Court finds that each of the arguments fail and that its written opinion and judgment is supported by the facts presented at trial and the applicable law. While it would be an inefficient use of the Court's time to rehash its entire 33-page written opinion on this motion to reconsider, the Court will briefly address why each of the arguments made by Savage fail below.

**A.     It was legal error to deny Savage the right to respond to the United States' 45-page proposed findings of fact and conclusions of law.**

Savage argues that the Court "adopted virtually every important aspect of the Government's proposed findings and did so without giving Savage the opportunity to respond" and that the Court's failure to allow Savage to respond to the "45-page wish list of conclusions of law and findings of fact" was a legal error.

Savage could not be more wrong.  First, the Court notes that it is relatively standard practice for a court to have the party who prevails at trial to submit proposed findings of fact and

---

[1] The Court notes that the original judgment entered on March 30, 2023 was amended on April 12, 2023 to include final judgment related to a prior summary judgment ruling that was inadvertently omitted from the original judgment.  The motion was timely regardless of whether the relevant date is March 30, 2023 or April 12, 2023.

conclusions of law. As previously noted in its Order denying Savage leave to respond, the proposed findings of fact and conclusions of law submitted by the prevailing party are just that-proposals. *See* Doc. 231.  Second, while the Court denied Savage's request to file a response to the United States' proposed findings of fact and conclusions of law, Savage still submitted its own proposed findings of fact and conclusions of law.  Doc. 230.  Though the proposed findings from Savage were unsolicited, the Court reviewed and considered them when drafting its written opinion.  *See* Doc. 231.  Thus, the argument that the United States was permitted to submit a "wish list" of conclusions of law and findings of fact completely uncontroverted is a misrepresentation, as Savage also presented its own proposed findings of fact and conclusions of law.  Further, though Savage argues that the Court adopted every important aspect of the United States' proposed findings, the proposed findings and conclusions submitted by the United States was 45 pages long, whereas the Court's written opinion was 33 pages.  *Compare* Doc. 228 *with* Doc. 233.  In fact, the Court made very deliberate choices to remove some matters that the Court felt were an overreach on the findings and conclusions.  Clearly, the Court did not simply "uncritically" adopt every aspect of the United States' proposed findings.

**B.    Trial Judgment Contains Manifest Errors of Law**

   **1.  The Court erred in its application of the *Oregon* and *Louisiana* Doctrines.**

Next, Savage argues that the Court made a manifest error of law in its application of the Oregon and Louisiana Doctrines.  Savage's argument is grounded in the fact that in the written opinion, the Court found that the video of the locking procedure on the night of the accident "shows no discernible movement on the part of either the towboat or its barges." Doc. 237 at 9.  However, Savage takes the Courts statement out of context and attempts to twist it into a contradiction.  At trial, Savage argued that the water being drained from the lock during the locking procedure caused

a surge which in turn caused the barge to get hung up on the miter sill. The video of the barge during the locking procedure, however, showed no surge and no movement by the barge when the water was draining—until the barge fell from the miter sill. It is important to note that the video shown at trial was only a snippet of the video footage of the locking procedure that night because Savage failed to preserve to preserve the video footage from the Savage's cameras. The only reason that the footage exists is because Captain Ellis went back to the Savage after the accident, watched the footage, and recorded videos of the footage with his cell phone. The footage is pixelated and poor quality, and it begins when water has already begun draining from the lock. Had Savage properly preserved evidence from the video cameras, the Court would have been able to view footage from the entirety of the night and not just the short snippet that it did see. Taken with the other evidence presented at trial, such as the fact that all witnesses and both parties agreed that the barge was in the correct place at one point, means that the barge shifted at some point after the Savage Crew got it into position and the Lock Operator checked that position, and before the video footage in which the Court could see no discernable movement, including no surge in the water contrary to Savage's argument.

### 2. The Court erred in its application of the *Pennsylvania Rule* in light of the Government's violation of 33 C.F.R. § 207.300(a).

Next, Savage argues that the Court made a manifest error of law in its application of the Pennsylvania Rule in light of the United States' alleged violation of a federal regulation, and further argues that the Pennsylvania Rule should be applied against the United States. As the Court already noted in its written opinion, "Savage disregards other language from the same regulation [33 C.F.R. § 207.300] that undercuts its preferred reading: '[t]he restrictions and admonitions contained in these regulations shall not affect the liability of the owners and operators of floating craft for any damage to locks or other structures caused by the operation of such craft."

Furthermore, the Court did not rely anywhere in its written opinion on the Pennsylvania Rule. In fact, a thorough reading of the opinion reveals that the Pennsylvania Rule is mentioned only once, and it was in the section of the opinion addressing the history of the case and discussing the fact that the Pennsylvania Rule, and the Oregon/Louisiana Rule are burden shifting mechanisms of general maritime law and not defenses or legal theories.

### 3. The Court erred in rejecting the application of "Last Clear Chance" Doctrine.

Next, Savage argues that the Court erred in rejecting the application of the Last Clear Chance Doctrine. The Court previously heard Savage's argument as to the application of the Last Clear Chance Doctrine, and the Court previously found it unconvincing, as indicated in the written opinion. *See* Doc. 233 at 22-23. Savage's argument is the same as it was at trial, and the Court finds that it still fails.

### C. The Day Four Theory was inadmissible.

Next, Savage again argues that the "Day Four Theory" presented by the United States via expert Captain Berry was inadmissible. Savage argues, as it already did at trial, and again in its own proposed statement of facts and conclusions of law, that Captain Berry abandoned his original theory in favor of a contradictory one stated for the first time on day four of the trial, and that this new and contradictory theory "was extremely prejudicial to Savage" because it was "the deciding factor in a case that took years to prepare for trial." Doc. 230 at 1-11.

This argument, once again, fails. As the Court previously stated, the theory introduced by Captain Berry on day four of trial "best takes into account the evidence at hand, resolving consistencies and inconsistencies." Additionally, contrary to Savage's argument and as the Court already stated when it permitted Captain Berry to give the opinion, the United States could not have disclosed the "Day Four Theory" earlier because it was based on a change in testimony at

trial by Pilot Ellis.

Furthermore, even if Captain Berry had not offered the "Day Four Theory," the Court would have found in favor of the United States because the only other theory that the Court found could have explained the cause of the accident would be slack or tying of the lines by the crew. *See id.* at 28-29.  Therefore, even if it was an error to permit Captain Berry to give his "Day Four Theory," which the Court does not believe it was, the Court still would have found Savage at fault. Whether it was under the "Day Four Theory" or Captain Berry's original theory, it makes no difference in the outcome of the case.

### D. The Court impermissibly made "alternative" factual findings that are mutually inconsistent with the "main" factual findings.

Next, following on its immediately preceding argument, Savage argues that the Court impermissibly made alternative factual findings that are mutually inconsistent with the main factual findings when it found that Savage was responsible for the accident either under Captain Berry's original opinion, or under Captain Berry's "Day Four Theory."

First, while the alternative findings may be "mutually inconsistent and irreconcilable," it does not matter because the Court found that either one **or** the other was true.  The Court did not find that they were both true, but rather that both were the only logical explanations from the accident given the evidence presented at trial and **one of them had to be true**.  Unfortunately, and specifically because Savage failed to preserve the video evidence from the entirety of the night of the incident, the Court has no way to determine with certainty which of the two theories was the cause of the accident.  However, it was abundantly clear from the evidence that one of the two theories logically explains what happened and under either theory, Savage is responsible for the accident.

Second, courts frequently make alternative findings of fact, and this Court is not aware of,

nor has Savage provided, any binding authority which states that it is impermissible for courts to make such alternative findings. The Court is well aware, however, that its job "is to make factual findings and apply the law based on the same," and it has done that here. Put simply, the Court, as the fact finder, simply did not believe Savage's explanation or trial theory and instead found against it.

**E.     The Court erred in denying Savage's pre-trial motion to exclude brand new previously undisclosed legal theories.**

Next, Savage argues that the Court erred in denying Savage's pre-trial motion to exclude brand new previously undisclosed legal theories. Following Savage's argument, Savage would have the Court rule on the admissibility of evidence prior to that evidence being disclosed to the Court. The Court simply cannot rule to exclude evidence that it, and the parties, do not know exists. As the Court stated when it denied Savage's motion, "[t]he only examples of new 'defenses or legal theories' that Savaged provide[d] [we]re the Pennsylvania Rule and the Oregon/Louisiana Rule." Doc. 218 at 2. As previously noted, those rules are burden shifting mechanisms of general maritime law, not defenses or legal theories. When it denied the motion, the Court stated that "[t]o the extent that the United States presents any new legal theories or defenses not listed in the motion, Savage may raise objections as appropriate at trial." *Id.* Savage raised its objection to the "Day Four Theory" at trial, and the Court overruled the objection, finding that the change in opinion was based on new evidence presented *by* Savage at trial, and therefore it could not have been disclosed to Savage prior to trial.

**F.     The Court erred in its ruling on the admissibility of non-report evidence derived from the NTSB.**

Next, Savage argues that the Court erred in granting the United States' motion to prohibit Savage from introducing evidence derived from the joint investigation performed by the National

Transportation Safety Board ("NTSB"). Savage repeats the argument that it made prior to the Court ruling on the motion. As the United States notes in its response, because this was a joint NTSB/USCG investigation, separate sets of statutes and regulations prohibit the use of the investigation in a civil case. *See* 49 U.S.C. § 1154(b); 46 U.S.C. § 6308(a). Nothing that Savage argues changes the fact that such investigation materials may not be used in a civil case. The Court finds no error in its prior ruling and will not change it here.

G.   **The expert designation of Justin Murphree was improperly vague.**

Next, Savage argues that the expert designation of Justin Murphree was improperly vague because he was designated as an expert in the mechanical operation of locks "and on the subject areas that we just covered briefly." Savage claims that the United States "seized on the vague designation to allow Murphree to, among other things, weigh in on the proper way to operate a lock." Doc. 237 at 33.

First, the Court notes that this was a bench trial. In such situations, courts have found that the traditional Daubert analysis may be somewhat relaxed. *See, e.g., United States v. Brown*, 415 F.3d 1257, 1268-69 (11th Cir. 2005) ("Those barriers are even more relaxed in a bench trial situation, where the judge is serving as factfinder and we are not concerned about dumping a barrage of questionable scientific evidence on a jury. . . . There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.") (citations and internal quotation marks omitted); *see also United States v. Wood*, 741 F.3d 417, 425 (4th Cir. 2013) ("[B]ecause the district court was also the trier of facts, the district court's evidentiary gatekeeping function was relaxed, and the district court was in the best position to decide the proper weight to give the expert opinions."); *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) ("[W]here the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the

ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702."); *Bobo v. TVA*, 885 F.3d 1294 (11th Cir. 2017) (quoting *Brown* and stating same); *Braggs v. Dunn*, Civ. Act. No. 2:14-cv-601-MHT, 2017 WL 2984312, *3, 2017 U.S. Dist. LEXIS 108548, *17 (M.D. Ala. Jul. 13, 2017) ("[T]he Daubert barriers to admissibility are more relaxed in a bench trial, 'where the judge is serving as factfinder,' and the court need not be 'concerned about dumping a barrage of questionable scientific evidence on a jury.'") (quoting *Brown*); *M.D. v. Abbott*, 152 F. Supp. 3d 684, 709 (S.D. Tex. 2015) (citing *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000)) ("The safeguards outlined in Daubert are less essential in a bench trial," because a judge need not gatekeep for himself/herself.).  Therefore, without the concern of confusing a jury, the Court was able to hear Justin Murphree's testimony and distinguish for itself what it was able to consider and not consider based on his qualifications.

Furthermore, the Court fails to see how Justin Murphree testifying as to how to operate a lock does not fall within the expert designation of the mechanical operation of locks.  Additionally, in its motion for a new trial, Savage merely repeats its same arguments that it made as to Justin Murphree's qualifications at trial, which the Court already heard and ruled on.  A rule 59 motion is not the place to relitigate old matters.  *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008).

**H.    The Court erred in finding that there was new evidence related to Pilot Ellis' definition of the term "dogging."**

Next, Savage argues that the Court erred in finding that there was a change in Pilot Ellis' definition of the term "dogging" from his deposition to when he testified at trial.  Again, Savage made this same argument at trial, and the Court disagrees with Savage now just as much as it did at the time Savage originally made the argument.  It is clear from comparing Pilot Ellis' deposition testimony with his trial testimony that there was a change in his definition of "dogging."

**I.     The Court erred in finding that Savage's crew was "equally familiar" with the Jamie Whitten Lock as the Lock Operator who operated it roughly forty hours per week.**

Next, Savage argues that the Court erred in finding that "[e]ven if Savage is correct about the tow's distance from the sill, the towboat crew was equally familiar with distances and dynamics in the lock chamber." Savage claims that this finding is factually unsupportable because Bobby Pharr operated the Jamie Whitten Lock on a full-time basis, and the crew does not.

While the Savage crew may not visit the lock as frequently as Bobby Pharr, prior to the incident, Pilot Ellis had transited the lock at least 250 times. Savage attempts to re-argue the facts and evidence that were already before the Court when it made its findings of fact and conclusions of law. As Savage has already stated, the Court's job "is to make factual findings and apply the law based on the same." The Court has already heard the evidence that Savage reiterates, and considering all the evidence before it the Court reasonably concluded that the Savage crew was just as familiar as the lock operator with how to transition the lock and where the tow needs to be placed. And, regardless of whether the crew was "equally familiar," the evidence showed that all parties agreed that the tow was in the appropriate place before dewatering began, and the Court found that the only way the tow could have become hung up on the miter sill was by some fault of the Savage crew *after* the lock operator checked the tow's position.

**J.     The Court erred in finding that there is no surge in the Jamie Whitten Lock.**

Next, Savage argues that the Court erred in finding there is no surge in the Jamie Whitten Lock. Again, the Court need not rehash its findings of fact here. The Court heard the evidence that Savage attempts to re-present here, out of context and without the presentation of the rebutting evidence that the Court also considered. Based on the presentation of the evidence, the Court found "I credit the testimony from the supervisor of the lock that—the engineer presented by the government that did the test—about the emptying of the lock. And I find that it wasn't surge. And

to the extent that there was any, quote, 'surge' in the lock, it would have been a downward force rather than an upward or backwards force." Trial Transcript at 1003-05. Savage repeating evidence that the Court already heard and weighed against contrary evidence makes no difference in the Court's original finding.

**K.   A new trial is appropriate due to the existence of new evidence that was not available at trial.**

Finally, Savage argues that a new trial is appropriate because new evidence that was not available at trial exists to disprove the "Day Four Theory." Savage attaches a sworn declaration from expert Chris Brown that it argues would likely produce a new result in this case. That is where Savage is wrong. The Court found that the "Day Four Theory" was the most logical explanation for the cause of the incident. However, if it were not the "Day Four Theory" that explains how the Savage became hung up on the miter sill, then it was Captain Berry's original theory that explains the cause of the accident. Furthermore, as the United States iterates in its response, there is no testimony to suggest Pilot Ellis had both engines engaged in equal measure, and Chris Brown cannot say with certainty that the towboat's engines were turning the same RPMs, which fatally undermines his thesis.

### III.   CONCLUSION

The Court finds nothing in the Rule 59 motion that causes it to question its determinations in the written bench opinion. Further, the Court finds no manifest errors of law or fact. Rather, the matters are all matters that were previously litigated or could have been raised previously. Therefore, Savage is not entitled to relief pursuant to Fed. R. Civ. P. 59. Accordingly, Savage's motion for new trial, reconsideration, or alteration/amendment of the judgment (Doc. 237) is **DENIED**.

**DONE** and **ORDERED** this 25th day of March, 2024.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE